### Application of Paul A. MULLER.
### Patent Appeal No. 8857.

United States Court of Customs and Patent Appeals.

Aug. 9, 1973.

David E. Varner, Cushman, Darby & Cushman, Washington, D. C., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, LANE, Judges, and WATSON, Judge, United States Customs Court, sitting by designation.

WATSON, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection under 35 U.S.C. § 103 of claims 11 and 12 of appellant's application [1] entitled "Crimped Flat Material for Filter Plugs." We reverse that decision.

### Invention

Appellant's claims are directed to a paper material (claim 11) which can be used as the filtering medium for cigarettes and a filter (claim 12) made therefrom. The claims are reproduced below:

> 11. An absorbent sheet adapted to be gathered and shaped to make a filter plug for cigarettes comprising an elongated web of paper strip material having set therein, throughout the area thereof, closely-spaced corrugations extending generally longitudinally of said web, said web being stretched laterally and the fibers of

1. Serial No. 700,300 filed January 24, 1968.

said strip material being at least partially pulled apart laterally of said web to an extent sufficient to provide throughout the extent of said web a plurality of randomly-distributed discontinuous longitudinal tears.

12. A filter for cigarettes comprising a consolidated filling having the shape of a cylindrical plug, said filling consisting essentially of paper strip material provided with closely-spaced longitudinal corrugations set therein, throughout the area thereof, prior to consolidation of said filling, said paper strip material being stretched transversely and the fibers of said paper strip material being at least partially pulled apart transversely of said material to an extent sufficient to provide throughout the extent of said material a plurality of randomly-distributed discontinuous longitudinal tears, said material having lateral gathers disposed close to each other in compressed relation and arranged as adjacent layers whereby said consolidated filing has generally longitudinal passageways along said corrugations and between said layers, and said passageways are generally laterally connected through said tears.

The claimed invention can be best understood by considering the process by which the filter paper is made. Briefly, and with optional steps omitted, a continuous length of paper is unrolled and passed through a moistening device which makes it more yielding. The moistened paper is then passed through at least one set of crimping or corrugating rollers which also *laterally* stretch the paper as it is longitudinally crimped. A set of rollers is made up of two rollers each of which has closely spaced circumferential ribs and grooves. The rollers are shaped so that the ribs of one extend into the grooves of the other.

According to appellant's specification, the rollers are designed to interact on the paper material being crimped in a manner that:

* * * two narrow zones of material are kept rigid along each groove and the central zone in between is deformed. Owing to the lateral zones being kept rigid, the central zone can only be deformed if the material in it is stretched at the same time.

This stretching process, of course, partially separates or pulls apart and consequently loosens the fibers of the material. This process is carried out successively on a plurality of parallel grooves and yields a web of material whose surface has been enlarged at the expense of the thickness of the material at the [stretch] point concerned.

 *  *  *  *  *  *

The stretching of the flat material depends primarily on the depth of the individual grooves and may be greater or less according to the type of material.

 *  *  *  *  *  *

* * * for filtering purposes the material can be so vigorously stretched that randomly distributed tears, cracks and holes are produced in the crimped web.

The tears created by this process run in a longitudinal direction and are characterized by having ragged edges caused by the fibers being torn rather than cut apart by a knife or other sharp instrument.

After the crimping step, the paper web is dried to set the corrugations. Cigarette filters are made from this paper by compacting it by well-known procedures.

### Opinion

The board construed the examiner's rejection of claims 11 and 12 under 35 U.S.C. § 103 as having been based on a combination of three references. These references are:

| Walker | 1,980,563 | | November 13, 1934 |
|---|---|---|---|
| Davidson | 2,164,702 | | July 4, 1939 |
| Bunting | 420,464 | (British) | December 3, 1934 |

Davidson discloses a method of making a filler plug for a cigarette mouthpiece which involves crimping ordinary paper or gathering creped paper. Although the specification to this patent

occasionally uses the term "filter" for this plug, it is quite apparent that this is a typographical or printing error. The disclosure is in terms that make it clear that the corrugated or crimped paper is intended to be merely a filler for the mouthpiece as no filtering function is attributed to it. The crimping is done in a manner similar to that used by appellant as grooved rollers are used. Regarding this process, the following observation appears in Davidson:

> With some grades or classes of paper there is a risk of tearing if the rugations be formed simultaneously across the strip.

To avoid this problem, Davidson recommends that the corrugations be put in the paper by a sequence of corrugating steps rather than by putting them in by a simultaneous process.

Walker discloses a cigarette structure having one end covered by a circular piece of paper. Holes are made in the paper to allow smoke to pass through. It is preferred that these holes be punched in the paper, rather than cut, in order that they might present ragged edges to the smoke as it passes through. These edges are intended to aid in filtering the smoke by straining out impurities.

Bunting describes cigarette filters in general, including one made of creped paper having perforations or ruptures therein. These perforations may be uniformly or randomly disposed in the creped paper. The manner in which these perforations can be made is not described. However, from a drawing showing them as round holes, it can be assumed that one technique used would be to cut out a portion of the paper.

In reaching its conclusion that the invention would have been obvious, it appears to us that the board did so, at least in part, because of an erroneous conclusion reached by it regarding what is taught by Davidson. The board said:

> Davidson also discloses what he wishes to avoid, namely the tearing of longitudinal slits by stretching the paper in a direction transverse to the slits and to the length of the web.

From this the board reasoned as follows:

> In our opinion, it would be suggested to one ordinarily skilled in the art of paper manufactures that the strip of Davidson's Figure 13 could be provided with irregularly distributed "breaks or ruptures" as in Bunting, that those breaks or ruptures could be made by stretching appropriate quality of paper as in Walker for Walker's frayed edge purpose; and that the stretching could be lateral to create tears longitudinally of the strip in the manner Davidson discloses but wishes to avoid.

We do not agree with the board's reasoning. The conclusion made with regard to Davidson can only have been reached by reading into it appellant's disclosure of his own invention. The reference is completely silent as to whether the tearing observed by Davidson results in longitudinal slits. For all it reveals, the tearing may have been, and probably was, so severe that the paper could not have been used as a filler for a cigarette mouthpiece. If this were not so, there would be no need to describe a method to avoid that which Davidson regarded as a problem. After all, the paper obtained by appellant's process functions as a *filler* and a *filter* for a cigarette mouthpiece. This would indicate that had Davidson merely torn slits in the paper, as the board suggests, it would still have been useful as a filler for the mouthpiece.

Because Davidson teaches that crimping should not be done under conditions where tearing will occur, presumably for the reason that he could not control the tearing enough to obtain useful paper, we do not think that it would be obvious to one skilled in the art to combine the teachings of Walker and Bunting with Davidson in order to obtain appellant's invention. Neither Walker nor Bunting

describes a filter having elongated tears with ragged edges as a filtering aid, and we find in them no suggestion of the desirability of such a structure.

One might ask why elongated tears vis-a-vis tears or cuts of circular or near circular cross-section are not merely a matter of choice. In other words, why would it not be obvious to merely provide any filter paper, for example, Bunting's or a paper in the configuration shown by Davidson, with longitudinal tears rather than cut or punched holes? Our answer to that question grows out of the claim language itself. Claims 11 and 12 do not call for longitudinal holes or slits per se in the filter paper. Instead, they call for tears produced by laterally pulling the paper web apart "to an extent sufficient to provide throughout the extent of said web a plurality of randomly-distributed discontinuous longitudinal tears." In other words, the tears are defined by the process by which they are made. As such, and the Patent Office has not suggested otherwise, we are forced to assume that the manner in which the tears are made would distinguish the paper from that obtained by other methods which might be envisioned as producing a similar paper. For this reason, the manner in which the tears are made becomes a critical consideration in determining whether the claims would have been obvious to one skilled in the art since the paper and the process of making it cannot be divorced from each other.

As we have already pointed out, Davidson in effect teaches away from appellant's process of making his paper. The methods disclosed in Walker and Bunting are not related to that used by appellant. All of these considerations convince us that the invention would not have been obvious. Accordingly, the decision of the board is reversed.

Reversed.

MARKEY, C. J., dissents.

BALDWIN, J., concurs in the result.